**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INGLEWOOD PARK CEMETERY ASSOCIATION, Respondent.**

**No. 19741.**

United States Court of Appeals
Ninth Circuit.
Jan. 14, 1966.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin J. Welles, Richard S. Rodin, Attorneys, N.L.R.B., Washington, D. C., for petitioner.

Richard W. Lund, John S. Welch, Robert B. Wessling, Los Angeles, Cal., for respondent.

Before POPE, DUNIWAY, and ELY, Circuit Judges.

ELY, Circuit Judge:

The National Labor Relations Board petitions, under section 10(e) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(e), for a decree enforcing its order issued against respondent, Inglewood Park Cemetery Association. Respondent urges that we deny the petition on the ground that the Board lacked jurisdiction for the issuance of its order.

The Board concluded that the respondent violated section 8(a) (1) and (3) of the NLRA,[1] by interrogating and threatening its employees with regard to their protected activities, by discharging three employees because of their activities in behalf of the union, and by discharging a fourth employee because of his close association with the union organizers. The Board's order requires respondent to cease and desist from the unfair labor practices found and from, in any other manner, interfering with, restraining, or coercing its employees in the exercise of their protected activities, and affirmatively requires respondent to reinstate the discharged employees immediately to their former or substantially equivalent positions, to make them whole for any loss of pay they may have suffered by reason of respondent's discriminatory conduct, to preserve and make available records relevant to the computation of

---

1. "Sec. 8(a) It shall be an unfair labor practice for an employer—(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;

&ast; &ast; &ast; &ast; &ast;

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: &ast; &ast; &ast." 29 U.S.C. § 158 (a) (1), (3). Section 7 provides in part: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, &ast; &ast; &ast; and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, &ast; &ast; &ast." 29 U.S.C. § 157.

backpay due, and to post appropriate notices.

 In our court, respondent does not challenge the conclusions and order of the Board as they pertain to unfair labor practices; hence, our consideration is confined to the Board's conclusion that respondent's business affects interstate commerce within the meaning of the Act and that it would effectuate the policies of the Act for it to assert jurisdiction.

Respondent is a California corporation engaged in the operation of a cemetery located in Inglewood, California. From a period beginning July 1, 1962, and ending June 30, 1963, during which the four employees were discharged, the respondent received in excess of $500,000 from the sale to the public of services, burial lots, crypt spaces, and related items. During the fiscal year period, respondent purchased $3,086.31 worth of goods from sources outside the State of California.

"The Congress shall have Power * * To regulate Commerce * * * among the several States * * * [and] To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, * * *." U.S. Const. art. I, § 8. The Board derives its existence, power, and direction from national labor legislation enacted by Congress under the authority of article I, section eight of the Constitution. Section 10(a) of the NLRA provides that "The Board is empowered, * * *, to prevent any person from engaging in any unfair labor practice * * * affecting commerce." 29 U.S.C. § 160(a). "Commerce" is defined as "trade, traffic, commerce, transportation, or communication among the several States, * * *." (29 U.S.C. § 152(6)) and "affecting commerce" is defined as "in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce" (29 U.S.C. § 152(7)).

The respondent contends that its activities are essentially local, that the doctrine of *de minimis* is applicable as to its interstate purchases, and, thus, that its operations do not "affect commerce".

 It has been established that it is within the province of Congress to regulate essentially local activity if such activity affects commerce among the several states. Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). It is also established that "Congress intended to and did vest in the Board the fullest *jurisdictional* breadth constitutionally permissible under the Commerce Clause." N. L. R. B. v. Reliance Fuel Oil Corp., 371 U.S. 224, 226, 83 S.Ct. 312, 313, 9 L.Ed.2d 279 (1963). (Emphasis in original.) And with regard to the exercising by the Board of its jurisdiction the Supreme Court has stated:

"The Act establishes a framework within which the Board is to determine 'whether proscribed practices would in particular situations adversely affect commerce when judged by the full reach of the constitutional power of Congress. Whether or no practices may be deemed by Congress to affect interstate commerce is not to be determined by confining judgment to the quantitative effect of the activities immediately before the Board. Appropriate for judgment is the fact that the immediate situation is representative of many others throughout the country, the total incidence of which if left unchecked may well become far-reaching in its harm to commerce.' Polish Alliance v. [National] Labor [Relations] Board, 322 U.S., [643] at 648 [64 S.Ct. 1196, at 1199, 88 L.Ed. 1509]. See also [National] Labor [Relations] Board v. Fainblatt, 306 U.S., [601] at 607–608 [59 S.Ct. 668, at 672, 83 L.Ed. 1014]." N. L. R. B. v. Reliance Fuel Oil Corp., 371 U.S. at 226, 83 S.Ct. at 313.

 We cannot ignore the fact that business concerned with death is "big"

business,[2] and the Board has determined that in the interlacings of business across state lines the particular operation involved can and may affect interstate commerce adversely.

As to the respondent's contention that the $3,086.31 in purchases outside the State of California is *de minimis,* we are confronted with a problem not capable of solution by application of precise mathematical formula. We have held that a dry-cleaning establishment doing approximately $12,000 per year in interstate business fell within the jurisdiction of the Board. N. L. R. B. v. Stoller, 207 F.2d 305 (9th Cir. 1953), cert. denied, 347 U.S. 919, 74 S.Ct. 517, 98 L.Ed. 1074 (1954). The Seventh Circuit has held that a local transit company which purchased, locally, approximately $2,000 worth of materials originating outside the state in which it operated was subject to the jurisdiction of the Board, saying, as to the *de minimis* argument of the company, "The time has not yet arrived when $2,000 is but a trifle." N. L. R. B. v. Aurora City Lines, Inc., 299 F.2d 229, 231 (7th Cir. 1962). The Supreme Court has written that "we can perceive no basis for inferring any intention of Congress to make the operation of the Act depend on any particular volume of commerce affected more than that to which courts would apply the maxim *de minimis.*" NLRB v. Fainblatt, 306 U.S.

601, 607, 59 S.Ct. 668, 672, 83 L.Ed. 1014 (1939). Here, the close question has troubled us. We are required, however, to accord a proper measure of respect to Board conclusions. In the light of that consideration, we, with a degree of reluctance, affirm the determination that, under all the circumstances shown by the record, the *de minimis* maxim cannot be applied to vitiate the order.

The Petition for Enforcement is granted.[3]

2. See generally Harmer, The High Cost of Dying (1963); Mitford, The American Way of Death 39–41, 49–50 (1963); Sher, Funeral Prearrangement: Mitigating the Undertaker's Bargaining Advantage, 15 Stan.L.Rev. 415, 418–419 and nn. 12–15 (1963).

3. In some cases we have held that the inclusion of the phrase "in any other manner" was improper. See, e. g., N. L. R. B. v. Phaostron Instrument & Electronic Co., 344 F.2d 855 (9th Cir. 1965). In this case, however, the respondent has made no objection to the form of the order, and the history of the dispute, developed by testimony which the respondent did not deny, affords some justification for the order's broad direction. The four discharged employees had worked for the respondent for lengthy

and continuous periods of time. One of them, a power mower operator, had been engaged in the employment for approximately eleven years. All of them had been given wage increases from time to time, and prior to the period when they commenced to engage in union activities, no complaints had been made of their work. When the activities began, the respondent's superintendent advised the employees that he would not have a union and that he would fight against it. He undertook in other comments to discourage the activity, and when the employees were discharged, they were given false reasons for the termination of their work. The respondent has not contested the claims of unfair labor practices and in our court makes no contention that the Board's findings of such practices were improper.