**COMMUNITY CURRENCY EXCHANGE, INC., et al., Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 71-1569.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 11, 1972.

Decided Dec. 20, 1972.

4. *See, e. g.*, United States v. Greitzer, 18 F.R.D. 304, 306 (E.D.Pa.1955).

Edward H. Hatton, Douglas C. Nohlgren, Jonathan T. Howe, Chicago, Ill., for petitioners.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Howard J. Kaufman, Linda Sher, Jane Pasachoff, Attys., N. L. R. B., Washington, D. C., for respondent.

Before SWYGERT, Chief Judge, and PELL and STEVENS, Circuit Judges.

SWYGERT, Chief Judge.

This case is before us upon the petition of Community Currency Exchange, Inc. and three affiliated Exchanges (the company) to review a National Labor Relations Board order to bargain with the Board certified union. The Board has filed a cross-application for enforcement of its order. We grant enforcement.

The company, which is comprised of four Chicago area currency exchanges, challenges the Board's order to bargain with Local 725 of the Armored Car Drivers, Helpers, Messengers and Allied Employees Union I.B.T., on the theory that the Board improperly asserted jurisdiction over the parties. The company's jurisdictional attack is two-fold: First, it argues that statutory jurisdiction was not present because the company's effect on interstate commerce was *de minimis*; and second, that the Board's own jurisdictional standards were not met in that the exchanges in question did not meet the Board's $500,000 gross volume of business requirement. Carolina Supplies & Cement Co., 122 N.L.R.B. 88, 89 (1958).

To resolve these questions, we have before us a record of the March 27, 1970 representation hearing, a subsequent stipulation of facts concerning the general operation of currency exchanges in the Chicago area, and the June 11, 1971

hearing into the company's alleged unfair labor practice in refusing to bargain with the union. This record, though less complete than might be desirable, indicates that the four currency exchanges operate as a "single employer" for both unit and jurisdictional purposes under the National Labor Relations Act. Each exchange writes and cashes money orders, cashes checks for a fee, and acts as a remitting agent for payment of utility bills. In addition, the currency exchanges charge a fee for obtaining state and city vehicle licenses and for notary public services. Some also render state and federal income tax services to their customers.

In accordance with the stipulation, the Board found that the exchanges issue money orders in excess of $500,000 per year and that more than $5,000 of these money orders are cashed out of state. Total gross receipts for the exchanges' services are $167,500 per year.

At the representation hearing in March, 1970, the Board ruled that it had jurisdiction over the exchanges and certified the union as the employees' bargaining representative. The company then refused to bargain and in response to the union's unfair labor practice reasserted its challenges to the Board's jurisdiction. Once again the Board, concluding that the company was an employer engaged in commerce within the meaning of section 2(6) and (7) of the Act, 29 U.S.C. § 152(6) and (7), found jurisdiction. In addition, in its June 21, 1971 order the Board held that the company's refusal to bargain with the certified representative was an unfair labor practice in violation of sections 8(a)(5) and (1). As to its jurisdictional ruling the Board found that the company's refusal to bargain had "a close, intimate, and substantial relationship to trade, traffic, and commerce among the several States and tend[ed] to lead to labor disputes burdening and obstructing commerce and the free flow of commerce."

The sole issue raised in this review is the company's two-pronged jurisdictional challenge.

## I

The essence of the company's argument against the Board's statutory jurisdiction is that currency exchanges are purely local enterprises which serve limited areas and have virtually no effect on interstate commerce other than the indirect and incidental exchange of their money orders in other states. That limited effect is, the company argues, *de minimis* for purposes of invoking federal jurisdiction. We disagree.

In enacting the National Labor Relations Act, Congress extended statutory jurisdiction to the Labor Board over any person "engaging in any unfair labor practice . . . affecting commerce." 29 U.S.C. §§ 160(a), 152(6) and (7). That grant of jurisdiction was given expansive judicial interpretation by the Supreme Court in NLRB v. Reliance Fuel Oil Corp., 371 U.S. 224, 226, 83 S.Ct. 312, 9 L.Ed.2d 279 (1963). There the Court held, that "in passing the National Labor Relations Act, Congress intended to and did vest in the Board the fullest *jurisdictional* breadth constitutionally permissible under the Commerce Clause." Thus the mere fact that the Company's businesses are currency exchanges "operating solely in the neighborhoods they serve" will not defeat the Board's jurisdiction. As this court noted in NLRB v. National Survey Services, Inc., 361 F.2d 199, 203–204 (7th Cir. 1966), any business, even if it is essentially local in nature, whose activity is "sufficiently within commerce to be touched by the power of Congress under the Commerce Clause . . . may be regulated. . . . [T]he fact that [the company's] activity may not have a substantial impact on commerce does not foreclose Board jurisdiction."

It is true, however, as the company urges here, that the Board's broad jurisdiction is limited by the *de minimis* doctrine. The *de minimis* concept, as enunciated in NLRB v. Fainblatt, 306 U.S. 601, 607, 59 S.Ct. 668, 83 L.Ed. 1014 (1939), operates to deny fed-

eral jurisdiction where a business's effect on commerce is so negligible that for jurisdictional purposes the enterprise is considered purely local. Although the concept is not susceptible to a mechanical application based upon a business volume formula, the Third Circuit has held that *"de minimis* in the law has always been taken to mean trifles—matters of few dollars or less."* NLRB v. Suburban Lumber Co., 121 F. 2d 829, 832 (3d Cir. 1941). We adopted that reasoning in NLRB v. Aurora City Lines, Inc., 299 F.2d 229, 231 (7th Cir. 1962). We do not deem the exchanges' effect on commerce trifling, either from the standpoint of dollar amount or business impact.

■ The parties stipulated that each exchange annually issues in excess of $5,000 in money orders which are cashed outside the State of Illinois. We note that that figure is significantly more than the $2,000 sum which we held not to be *de minimis* in *Aurora City Lines*. *See also,* International Union, Progressive Mine Workers v. NLRB, 319 F.2d 428, 435 (7th Cir. 1963), rev'd on other grounds 375 U.S. 396, 84 S.Ct. 453, 11 L.Ed.2d 412 (1964).

■ In addition, money orders are a common and universally accepted means for the transmission of payments in commercial transactions. As such, they are widely used in interstate business channels. We are not, therefore, disposed to view their effect as *de minimis*. Nor do we accept the company's assertion that because checks or other methods of transmitting money could easily be substituted for money orders in the event of disruption due to a labor dispute there is little likelihood of an adverse effect on interstate commerce. Clearly, the use of money orders as a medium through which interstate commerce is transacted sufficiently "affects" the flow of commerce to invoke Board jurisdiction under the National Labor Relations Act.

## II

In order to limit the potentially large number of businesses which would fall under the Board's jurisdiction by application of the statutory "affecting commerce" standard, the Board has narrowed its jurisdiction to those employers who not only meet the statutory requirement, but also do a gross volume of business exceeding $500,000 per year. Carolina Supplies & Cement Co., 122 N. L.R.B. 88, 89 (1958). The company argues that the Board violated its gross volume requirement by applying an improper method of computation. The Board computed the exchanges' annual gross dollar volume by totaling the face value of the money orders written. The company contends that the proper method of computing gross volume for currency exchanges is to compute the total amount received as fees for services provided. Citing a series of cases which hold that the proper measure of gross volume for companies which "handle, process and transmit customers' property and receive a fee for those services" is the dollar amount of fees received, the company urges that the Board arbitrarily ignored or misapplied the proper jurisdictional test. See In re Chicago Metropolitan Mutual Assurance Co., 119 N.L.R.B. 352 (1957); In re Lansing Automatic Federal Credit Union, 150 N.L.R.B. 1122 (1965); In re Aurora Moving & Storage Co., 175 N.L.R.B. 771 (1969).

■ We believe that the Board applied the correct computation in asserting the company's gross dollar volume. With respect to the sale of money orders, exchanges do not charge a fee for "holding" another's property. They actually sell a product. In such situations the gross dollar volume of business is correctly computed by totaling the face value of the product sold. It is for this reason that the principal authority relied upon by the company, Budget Ranch Market, 148 N.L.R.B. 1469 (1964), is, as the Board notes, inapposite since the supermarket selling money orders in that

case was merely acting "on behalf of a bank," and charging a fee for its service. In that situation, where an employer receives a fee for his services as an agent for another, face value would be an improper standard.

For the above reasons, we hold that the Board's assertion of jurisdiction in this case was proper and grant the Board's cross-petition for enforcement of its order.