**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**TIMBERLAND PACKING CORPORATION,
Respondent.**

**No. 76–1300.**

United States Court of Appeals,
Ninth Circuit.

March 18, 1977.

Rehearing Denied May 10, 1977.

Elliott Moore, Judith P. Wilkenfeld, Atty., N. L. R. B., Washington, D. C., argued, for petitioner.

Robert L. Johnson, Johnson & Foster, Lewistown, Mont., argued, for respondent.

Before DUNIWAY, ELY and CHOY, Circuit Judges.

DUNIWAY, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its order issued on November 24, 1975, and reported at 221 NLRB 728. The sole issue is whether the Board properly asserted jurisdiction over Timberland Packing Corporation.

Clearly, Timberland's activities have sufficient impact on interstate commerce to come within the Board's jurisdiction under the National Labor Relations Act, as amended, 61 Stat. 136, 73 Stat. 519, 29 U.S.C. § 151 et seq. (1970). See NLRB v. Fainblatt, 1939, 306 U.S. 601, 607, 59 S.Ct. 668, 83 L.Ed. 1014; NLRB v. Inglewood Park Cemetery Association, 9 Cir., 1966, 355 F.2d 448, 451.

The Board, however, because it lacks the time and resources to exercise jurisdiction over every enterprise which may come within its statutory jurisdiction, has developed administrative standards whereby it limits its assertion of jurisdiction to classes of enterprises which meet a required annual dollar volume of business. For non-retail enterprises, such as Timberland, the Board has announced that it will assert jurisdiction over such a business if it has any interstate inflow (purchases) or outflow (sales) of at least $50,000 annually. Andover Protective Service, Inc., 1976, 225 NLRB No. 64; Siemons Mailing Service, 1958, 122 NLRB 81, 85. This is measured in two ways, directly by purchases from or sales to out-of-state enterprises, or indirectly either by sales to in-state users meeting any of the Board's jurisdictional standards (except the indirect standards) or by purchases from local businesses of goods originating outside the state.

When applying its jurisdictional amount standards, the Board has consistently refused to consider expected or predicted changes in business volume; it has based its determination upon a more objective standard, the figures for the most recent calendar year or fiscal year, or the year just before the Board hearing. Jos. McSweeney & Sons, Inc., 1958, 119 NLRB 1399, 1401; Aroostook Federation of Farmers, Inc., 1955, 114 NLRB 538, 539.

The extent to which the Board "chooses to exercise its statutory jurisdiction is a matter of administrative policy within the Board's discretion, . . . and is not a question for the courts, . . . in the absence of extraordinary circumstances, such as unjust discrimination" (citations omitted). NLRB v. Carroll-Naslund Disposal, Inc., 9 Cir., 1966, 359 F.2d 779, 780. Timberland argues that certain sales to in-state users which meet the Board's jurisdictional standards should not have been considered in determining whether Timberland's interstate volume of business exceed-

ed the $50,000 standard. It maintains that the measuring year selected by the Board was not representative and that its selection amounted to unjust discrimination. We do not agree.

 The Board found that Timberland satisfied the indirect outflow test in fiscal 1973 by selling approximately $74,400 worth of goods to four in-state businesses, each of which met the Board's jurisdictional standards. Timberland argues that approximately $37,400 of that total was based upon sales which should have been excluded. First, it says that $17,000 received from Pacific Hides was caused by an abnormally high price for hides in that year. Second, it says that $20,400 in sales to Yogo Inn should not have been included because Yogo Inn normally did not have a sufficiently high volume of sales to come within the Board's jurisdiction. Both of those arguments are based upon Timberland's forecasts of future sales, in the first case its own, and in the second case those of Yogo Inn.

Substantial evidence supports the Board's finding that Timberland satisfies the Board's indirect outflow standard for jurisdiction. The Board has declined to rely, and should not be forced to rely, upon a business's predictions about its future operations. It is not arbitrary or discriminatory for the Board to use an objective test rather than one that rests upon a subjective prediction and may be entirely speculative. The representative year standard used by the Board was in conformity with its current practice and was not discriminatorily applied. Moreover, once the objective test is met, and the Board assumes jurisdiction, we will not require the Board to relinquish jurisdiction on the basis of predictions about the future or even on the basis of what actually happens in a later year. To do so would leave the employees, who have relied upon the Board's protection, at the mercy of the employer, and with no right again to call upon the Board to vindicate their rights. The Board has not abused its discretion.

The order of the Board will be enforced.