**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LIVING AND LEARNING CENTERS, INC., Respondent.**

No. 80–1706.

United States Court of Appeals, First Circuit.

Argued May 5, 1981.

Decided June 23, 1981.

---

Ruth Ihne, with whom William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel and Robert Sewell, Washington, D. C., were on brief, for petitioner.

George H. Foley, Boston, Mass., with whom Hale & Dorr, Boston, Mass., was on brief, for respondent.

Before BOWNES and BREYER, Circuit Judges, and WYZANSKI, Senior District Judge.*

WYZANSKI, Senior District Judge.

The National Labor Relations Board (NLRB) petitions for enforcement of its order directing Living and Learning Centers, Inc. (the Employer) to bargain with and supply information to Local 925 Service Employees International Union, AFL–CIO–CLC (the Union). § 8(a)(5) and (1) of the National Labor Relations Act (the Act); 29 U.S.C. § 158(a)(5) and (1). The Employer opposes the petition principally because it challenges the NLRB's determination that the Employer's teachers, teacher assistants, cooks and maintenance employees at the Waltham, Massachusetts child's day care center (Waltham Center) constituted an appropriate unit under § 9(b) of the Act, 29 U.S.C. § 159(b).

On June 6, 1979 the Union filed a petition asking that the NLRB, pursuant to § 9(b) of the Act, certify it as the representative of the Company's Waltham center teachers, teacher assistants, cooks and maintenance employees. After a hearing before an officer appointed by him, the NLRB's Regional Director made the following findings.

The Employer is a Massachusetts corporation engaged in the operation of day care centers in Massachusetts, Rhode Island, Connecticut and New Hampshire .....

The Petitioner seeks a unit limited to teachers, teacher assistants, cooks and

---

* Of the District of Massachusetts, sitting by designation.

maintenance employees employed at the Employer's Waltham, Massachusetts day care center. This unit consists of approximately 19 employees. There is no history of collective bargaining in this unit.

The Employer concedes the appropriateness of the job classifications sought by the Petitioner, but contends that the only appropriate unit is one including all 29 of its day care centers in Massachusetts, or, alternatively, all of its day care centers in Massachusetts, Rhode Island (one center), Connecticut (seven centers), and New Hampshire (one center).

The Employers' executive headquarters are located in Waltham, Massachusetts and occupy a separate floor in the building which houses the day care center, which is the subject of the instant petition.

Each day care center has a director, an assistant director, a cook and a maintenance man. The number of teachers and teacher assistants varies with the size of the enrollment at the individual day care center. There are approximately 2,500 children enrolled in the Employer's day care centers in Massachusetts and approximately 400 teachers and teacher assistants.

The children enrolled at the Employer's day care centers range from 6 months to 6 years in age. As well as being custodial, all of the Employer's day care centers have an educational curriculum. "I am! I can!," a 340 page folio-sized handbook sets forth the Employer's philosophy of child care and details methods and techniques of instruction. Once every four to six weeks all the directors of the Massachusetts centers meet with the executive officers at the Waltham, Massachusetts headquarters. At this meeting the executive officers indicate the methods of presentation of the monthly "themes," which are general concepts such as "round and red" and "person" and which are the same for all centers, in terms of the "I am! I can!" viewpoint and techniques. The directors are then responsible, without effective supervision from the Waltham, Massachusetts headquarters, to see that these "themes" are developed by the teachers and teacher assistants in consonance with the "framework" provided by the executive officers at the above meetings. While the record does not reveal with specificity the nature of the instructions which the directors receive at these meetings, they would appear to be general in nature from the fact that it is the teaching staff which initially prepares the weekly plan of instruction and activity for the current theme, subject to subsequent director approval, and it is expected that different centers may present a theme in an entirely different way. While two copies of the "I am! I can!" handbook are available at each center, the teachers and teacher assistants are not required to read it.

Each center director has authority to hire and discharge the teachers, teacher assistants, cooks and maintenance employees; to schedule their hours and to approve their sick days, personal days and leaves of absences. However, in practice the directors first consult with the Waltham, Massachusetts headquarters in the great majority of discharge cases. The director is also empowered to resolve disputes among center employees, although he may, but is not required to, ask the area supervisor to intervene if the dispute involves the teaching staff and the director or assistant director. While each director reports to one of four area supervisors at the Waltham, Massachusetts headquarters, the presence of these are [sic] supervisors at the center locations and their contact with the employees in the unit job classifications is minimal.

The Employer holds "workshops" which teachers and teacher assistants from all the centers may attend at their own discretion. The record does not disclose the frequency of such workshops, nor the degree of participation in them by teachers and teacher assistants.

Of teachers presently employed at the Waltham, Massachusetts center, none has been transferred from other day care centers. Three teachers presently employed at other centers have been transferred from the Waltham, Massachusetts center. The total of presently employed transferred teachers from all centers in Massachusetts is 25.

The Employer has a centrally established single wage and benefit policy for all its Massachusetts centers. Wages range from the legal minimum to $3.25 per hour. The only benefit is three days of sick leave per year. No wage increase for any employee may be granted to any employee without approval from the Employer's headquarters. However, the directors are authorized to recommend wage increases for individual employees working under their direction.

Under a single contract, the Massachusetts Department of Public Welfare pays, on a uniform basis, some percentage (undisclosed on the record) of approximately one-third of the children enrolled in the Massachusetts center. Pursuant to the licensing of day care centers, the Massachusetts Office for Children sets minimum standards as to teacher qualifications, the teacher/student ratio, and health requirements.

Payroll information is assembled at the individual centers and forwarded to the Waltham, Massachusetts headquarters, from which the employees' paychecks are then sent out.

All major purchases and financial transactions are decided at the Waltham, Massachusetts headquarters.

The Board has held that a single-plant, or single-store, unit is presumptively appropriate absent . . . "a functional integration so severe as to negate the identity of a single-plant, or a single-store unit." *Gray Drug Stores, Inc.*, 197 NLRB 924, 925 (1972). Based upon the above, it is found that the degree of the Employer's control of personnel policies and the extent of integration of the operations of the Massachusetts centers is insufficient to overcome this presumption in the present case. This conclusion is based on the infrequent inter-change and communication among the employees of the various centers and the separate immediate supervision by the director, who hires and may fire the center employees and is alone responsible on a day-to-day basis for the direction of their work and the resolution of their disputes. Accordingly, a unit limited to the Waltham, Massachusetts location is found to be appropriate. *Haag Drug Com-*

*pany, Incorporated*, 169 NLRB 877, 879 (1968); *Purity Food Stores, Inc. (Sav-More Food Stores)*, 150 NLRB 1523, 1527 (1965).

Upon the basis of his findings, the Regional Director ordered an election. The Board denied the Employer's request for review. The union won the election and the NLRB certified it as the representative of the teachers, teacher assistants, cooks and maintenance employees at the Waltham Center.

On February 26, 1980 the Union asked the Employer for specified information for the purpose of preparing contract proposals. The Employer refused on the ground that the unit certified by the NLRB was not an appropriate one. On April 7, 1980 the Union filed an unfair labor practice charge alleging that the Employer had violated § 8(a)(5) and (1) of the Act by refusing to bargain with the Union and by refusing to furnish relevant information. The Employer's answer, in addition to challenging the unit determination, denied that its activities so affected interstate commerce as to subject it to the Act, and alleged that it was without knowledge that the Union was a labor organization within the meaning of the Act.

In response to a motion of the NLRB's General Counsel, the NLRB entered a summary judgment and found that the Employer had violated § 8(a)(5) and (1) of the Act. Thereafter, the NLRB filed this petition. We rule against the Employer on all the issues raised in the Employer's answers referred to in the previous paragraph.

█ 1. The NLRB's jurisdiction to determine an appropriate unit for collective bargaining—*see* 29 U.S.C. § 159(c)—and its jurisdiction to prevent any person from engaging in an unfair labor practice—*see* 29 U.S.C. § 160(a)—alike depend on whether the matter is one "affecting commerce." That term "did vest in the Board the fullest *jurisdictional* breadth constitutionally permissible under the Commerce Clause." *NLRB v. Reliance Fuel Oil Corp.*, 371 U.S. 224, 226, 83 S.Ct. 312, 313, 9 L.Ed.2d 279 (1963). The NLRB had jurisdiction to issue

the order here involved both because the employer had a gross annual income in excess of $250,000—*see NLRB v. Kent County Ass'n for Retarded Citizens,* 590 F.2d 19, 23–24 (1st Cir. 1978)—and because it annually shipped and received goods valued in excess of $2,000 to or from Massachusetts. *Fairview Nursing Home,* 202 NLRB 318, 319 *enforced mem.,* 486 F.2d 1400 (5th Cir. 1973), *cert. den.,* 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974); *Von Solbrig Hospital, Inc. v. NLRB,* 465 F.2d 173, 174 (7th Cir. 1972); *NLRB v. Inglewood Park Cemetery Association,* 355 F.2d 448, 451 (9th Cir.), *cert. den.,* 384 U.S. 951, 86 S.Ct. 1572, 16 L.Ed.2d 548 (1966); *NLRB v. Aurora City Lines, Inc.,* 299 F.2d 229, 231 (7th Cir. 1962).

■ 2. The testimony of the Union's business agent supported the finding of the Regional Director that the Union is a "Labor organization" within the meaning of § 2(5) of the Act, 29 U.S.C. § 152(5).

■ 3. We reject the Employer's challenge to the NLRB's unit determination.

The "selection of an appropriate bargaining unit lies largely within the discretion of the Board, whose decision, 'if not final, is rarely to be disturbed.' *Packard Motor Car Co. v. NLRB,* 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947)." *Big Y Foods, Inc. v. NLRB,* 651 F.2d 40 (1st Cir. 1981); *South Prairie Construction Co. v. Local No. 627,* (1976) (*per curiam*) 425 U.S. 800, 805, 96 S.Ct. 1842, 1844, 48 L.Ed.2d 382.

■ Here the NLRB determined that a unit including all the employees (except "managerial employees, guards, and supervisors as defined in the Act") working at a particular center was appropriate. The Employer can succeed in overturning that determination only by demonstrating that that determination was "clearly not appropriate," not merely by showing that some other determination would have been better. *Banco Credito y Ahorro v. NLRB,* 390 F.2d 110, 112 (1st Cir.), *cert. den.,* 393 U.S. 832, 89 S.Ct. 101, 21 L.Ed.2d 102 (1968).

■ Even without the aid of any presumption, the NLRB's decision is at the least plausible. It does not smack of a gerrymander. *See S.D. Warren Co. v. NLRB,* 353 F.2d 494, 498 (1st Cir. 1965). Like a "plant" unit—which is a unit specifically contemplated by § 9(b)—a "center" unit is a natural or geographically based subdivision of an employer's employees. It immediately seems to be *an* appropriate unit because there is apt to be a bond of interest among all the persons employed by the same employer in connection with the same enterprise at the same locus. This, of course, does not mean that there may not be other appropriate and more inclusive units which would also be appropriate, and which, for reasons of administrative or managerial efficiency, may be preferred by an employer. However, as we held in the *Banco Credito* case, it is not sufficient for the employer to persuade us that a systems-wide unit would be more appropriate than a single center unit; the employer must show that the single center unit is "clearly not appropriate." Moreover, the NLRB is entitled to give greater weight to the interests of the employees in the Waltham Center than to the Employer's managerial interests in a multi-center unit. In the *Big Y* case *supra* we quoted with approval the following holding of *NLRB v. The Western and Southern Life Ins. Co.,* 391 F.2d 119, 123 (3d Cir. 1968):

" . . . . the overriding policy of the Act is in favor of the interest in employees to be represented by a representative of their own choosing for the purposes of collective bargaining, and the Board was entitled to give this interest greater weight than that accorded to the employer in bargaining with the largest, and presumably most convenient possible unit . . . . "

■ In deciding this case, the Regional Director's opinion was guided by a rebuttable presumption which the NLRB had adopted in 1968. Rejecting its own earlier views, the NLRB, upon the basis of its increasing experience, formally adopted a presumption that a single facility unit in a chain of units is an appropriate unit even though the employer administered from one headquarters labor relations, personnel, and other aspects of all the units in the chain.

*Haag Drug Co.*, 169 *NLRB* 877 (1968). *See Gray Drugstores, Inc.*, 197 *NLRB* 924, 925 (1972). Inasmuch as the presumption is consistent with the Act, has, like a "plant" unit, a rational foundation, and is founded on experience, the NLRB was entitled to invoke the presumption in this case. *NLRB v. Baptist Hospital*, 442 U.S. 773, 787, 99 S.Ct. 2598, 2606, 61 L.Ed.2d 251 (1979); *Beth Israel Hospital v. NLRB*, 437 U.S. 483, 501, 98 S.Ct. 2463, 2473, 57 L.Ed.2d 370 (1978); *Big Y Foods, Inc. v. NLRB, supra*. It had the effect of shifting to the challenger the burden of proof. *NLRB v. Baptist Hospital, Inc., supra*, 442 U.S. 781, 99 S.Ct. 2603.

In the instant case the presumption was strengthened by the showing that the director of the Waltham Center had the power to hire and fire employees (even though he customarily checked with headquarters before he dismissed an employee); that the director determined the precise times at which an employee should work; that the director was empowered to resolve disputes at the center; that the employees (not including the director) at the Waltham Center had not been transferred from elsewhere in the chain; that they had no regular, frequent contacts with employees elsewhere in the chain;[1] and that the Waltham Center was not in close geographical proximity to most of the other centers.

The significant evidence relied upon by the Employer to rebut the presumption was considered by the Regional Director in his decision. He referred to items such as these: that headquarters established a single wage and benefit policy for all its Massachusetts centers and decided just what each employee should be paid; that all major purchases and financial transactions were conducted at headquarters; that the directors of the Waltham Center and other centers were subject to area supervisors; that Massachusetts standards for teachers were the same in each unit of the chain; that contributions by the Commonwealth of Massachusetts to welfare children throughout the whole chain were covered by a single contract; and that there were opportunities for the teachers to go to workshops open to teachers from different centers. Other matters to which the Employer refers but to which the Regional Director did not refer were not of critical significance (e. g., tuition, transfer of directors, uniform use throughout the chain of a booklet setting forth the Employer's personnel policies, and the teacher's right of appeal to headquarters from the action of a director settling a conflict).

The analysis which we have made of the Regional Director's decision shows that, unlike the situation in *NLRB v. Purity Food Stores, Inc.*, 354 F.2d 926, 930 (1st Cir. 1965) and *NLRB v. Purity Food Stores, Inc.*, 376 F.2d 497, 501 (1st Cir.) *cert. den.* 389 U.S. 959, 88 S.Ct. 337, 19 L.Ed.2d 368 (1967), the NLRB gave fair and reasonable consideration to the relevant factors in determining that the Waltham Center was an appropriate unit. As we recently said in *Big Y Foods, Inc. v. NLRB, supra*,

". . . all that we as a reviewing court are authorized to consider is whether the administrative agency failed to give fair and reasonable consideration to the relevant factors; the weight assigned by the agency to each factor it has fairly considered is a matter for it to determine. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 [71 S.Ct. 456, 464, 95 L.Ed. 456] (1951); *Vermont Yankee Nuclear Power v. NRDC*, 435 U.S. 519, 558 [98 S.Ct. 1197, 1219, 55 L.Ed.2d 460] (1978); *Strycker's Bay Neighborhood Council v. Karlen*, 444 U.S. 223, 227–228 [100 S.Ct. 497, 499–500, 62 L.Ed.2d 433] (1980)."

■ We are not unmindful that there are cases in which courts have set aside NLRB determinations that single units in a large chain were not appropriate units on the ground that in those cases the local managers lacked authority to decide the kind of issues which are the usual subject of collec-

---

1. The testimony that 25 of the present teachers in the Employer's Massachusetts schools have taught in two or more of the Employer's schools is not shown to apply to the teachers now at the Waltham Center.

tive bargains. *E. g. NLRB v. Solis Theatre Corp.*, 403 F.2d 381, 383 (2d Cir. 1968); *NLRB v. Davis Cafeteria, Inc.*, 396 F.2d 18, 21 (5th Cir. 1968); *NLRB v. Frisch's Big Boy Ill-Mar, Inc.*, 356 F.2d 895, 897 (7th Cir. 1966). Those decisions do not apply to this case because here the local managers did have authority to resolve some collective bargaining issues—for example, discharges, disputes, hiring of new employees, and assignments of working hours. Moreover, as is acknowledged in *NLRB v. Solis Theatre Corp., supra,* those cases do not stand for an absolute proposition that the NLRB may *never* determine that a local unit in a chain enterprise is an appropriate unit unless the NLRB finds that the manager of the local unit has authority to decide collective bargaining issues. To lay down such an absolute rule would enable an employer, by centralizing all matters of labor policy, to prevent the NLRB from selecting as appropriate a unit of smaller dimensions than the employer's whole enterprise even though that smaller unit was the one which in light of all the relevant factors the NLRB determined would be appropriate under § 9(b) "in order to assure to employees the fullest freedom in exercising the rights guaranteed by" the Act.

In a case where a local manager had no authority finally to decide collective bargaining issues, but the NLRB had given the absence of such authority and all other relevant factors full and fair consideration, we sustained the NLRB's determination that a local branch unit was appropriate. *Banco Credito y Ahorro v. NLRB, supra.* That case is more than adequate authority to sustain the order of the NLRB in the instant case, particularly in light of the 1968 presumption which shifts the burden of proof.

*Petition granted.*