NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

SOUTHEAST ASSOCIATION FOR RE-
TARDED CITIZENS, INC., d/b/a
Southeast Work Training Center, Re-
spondent.

No. 80–7661.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1981.

Decided Jan. 28, 1982.

Victoria A. Higman, Washington, D. C., for petitioner.

Joseph A. Lumsdaine, Tredway, Brandmeyer, Torribio & Brazelton, Downey, Cal., for respondent.

Before ELY, PREGERSON and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

The NLRB's petition for enforcement of its order to bargain is granted.[1] The Board both acted within its discretion and provided Southeast with the required due process in the administrative hearing.

On September 12, 1979, the union filed a petition for an election at Southeast, which is a non-profit organization established to train handicapped people. A month later a hearing was held in order to determine whether the Board should assert jurisdiction over Southeast. After the hearing, the union and Southeast entered into a stipulation that Southeast had sold products in excess of $50,000 to four firms located in Southern California who were themselves directly engaged in interstate commerce. On December 4, 1979, the Regional Director issued a Decision and Direction of Election, which found, based upon the stipulation and the evidence produced at the hearing, that jurisdiction was properly asserted under the Board's standards for nonretail enterprises. The company's request for review of the Regional Director's decision was denied by the Board on January 3, 1980. The union won the election and was certified as the exclusive bargaining agent of the employees at Southeast.

After certification, the union requested routine information from Southeast. Southeast not only refused to provide the information, it explicitly refused to bargain with the union. The union then filed an unfair labor practice charge with the Board. Soon after, a complaint issued alleging that Southeast had violated § 8(a)(5) of the NLRA. Southeast admitted that it had refused to bargain, but justified its action on the basis that the Board had not properly exercised jurisdiction. The General Counsel responded to the company's response by filing a motion for summary judgment with the Board, at which point the Board issued a notice to show cause why the motion for summary judgment should not be granted. In response, Southeast reiterated its earlier contentions and contended for the first time that it had been denied due process in the representation proceeding. The Board found that all the issues raised by Southeast were or could have been litigated in the underlying representation proceeding and that the company did not offer to adduce any newly discovered or previously

---

1. The Board's Decision and Order is reported at  251 NLRB No. 70.

unavailable evidence. Accordingly, the Board found that by refusing to bargain with the union, Southeast violated § 8(a)(5) and 1 of the Act.

There are two central issues in this case: (1) Did the Board act within its discretion in exercising jurisdiction over Southeast? (2) Was Southeast denied due process in the administrative proceeding?

## I. DID THE BOARD ACT WITHIN ITS DISCRETION IN EXERCISING JURISDICTION OVER SOUTHEAST?

Section 10(a) of the Act empowers the Board to prevent the commission of unfair labor practices by "any person . . . affecting commerce." It is well settled that subject to specific exemptions in the Act, Congress has vested in the Board "the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause." *NLRB v. Reliance Fuel Oil Corp.*, 371 U.S. 224, 226, 83 S.Ct. 312, 313, 9 L.Ed.2d 279 (1963). Since the Act does not specifically exempt nonprofit charitable organizations from the Board's jurisdiction, the Board has held, with court approval, that it has jurisdiction over such employers when they affect commerce. *See NLRB v. Kent County Ass'n for Retarded Citizens*, 590 F.2d 19 (1st Cir. 1978); *NLRB v. Children's Baptist Home*, 576 F.2d 256 (9th Cir. 1978); *NLRB v. Wentworth Institute*, 515 F.2d 550 (1st Cir. 1975).

Given the expansive interpretation of the commerce clause, the Board's determination that an employer affects commerce "is not dependent upon any particular volume of interstate commerce." *NLRB v. Carpenters Local 2133*, 356 F.2d 464, 465 (9th Cir. 1966). Thus, the Board and the courts have consistently held that when an employer "has more than a de minimis impact on the flow of interstate commerce," *NLRB v. Kent County Ass'n for Retarded Citizens, supra*, 590 F.2d at 24, it is subject to the Board's broad statutory jurisdiction. *NLRB v. Townsend*, 185 F.2d 378, 382 (9th Cir. 1950), *cert. denied*, 341 U.S. 909, 71 S.Ct. 621, 95 L.Ed. 1346 (1951); *NLRB v. Westside Carpet Cleaning Co.*, 329 F.2d 758, 760 (6th Cir. 1964).

The Board has established certain jurisdictional standards for its use in determining whether it will assert jurisdiction over a particular type of enterprise. For nonretail enterprises such as Southeast, the Board has extended jurisdiction to reach those employers who have either purchases or sales of at least $50,000 annually. *Siemons Mailing Service*, 122 N.L.R.B. 81, 85 (1958); *Rhode Island Catholic Orphans Asylum a/k/a St. Aloysius Home*, 222 N.L.R.B. 1344, 1345 (1976). This is measured either directly by purchase from or sales to out-of-state enterprises, or indirectly by sales to in-state users meeting the Board's jurisdictional standards, or by purchases from local businesses of goods originating outside the state. *See NLRB v. Timberland Packing Corp.*, 550 F.2d 500, 501 (9th Cir.), *cert. denied*, 434 U.S. 922, 98 S.Ct. 397, 54 L.Ed.2d 279 (1977).

In the instant case, Southeast stipulated that it met the indirect outflow standard, i.e., that it sold products valued in excess of $50,000 to four firms that in turn either sold or purchased goods in excess of $50,000 out of state.

As already mentioned, the Board has jurisdiction over any enterprise whose effect on commerce is more than de minimis. Given the standards established by the Board and upheld by the courts, Southeast's stipulation to indirect interstate sales of $50,000 is sufficient to establish the Board's jurisdiction.

Southeast is mistaken in its belief that the Board can only assert statutory jurisdiction when the enterprise directly sells or purchases goods out of state. Such a contention has been explicitly rejected by the United States Supreme Court. *NLRB v. Reliance Fuel Oil Corp., supra*, 371 U.S. at 224–27, 83 S.Ct. at 313–14. *See also Bon Hennings Logging Co. v. NLRB*, 308 F.2d 548 (9th Cir. 1962); *Community Currency Exchange, Inc. v. NLRB*, 471 F.2d 39, 41.

Although the Board may have statutory jurisdiction in a particular case, it nonetheless retains the discretion to decide

whether the exercise of its jurisdiction would effectuate the policies of the Act. *NLRB v. Denver Building & Construction Trades Council*, 341 U.S. 675, 684, 71 S.Ct. 943, 949, 95 L.Ed. 1284 (1951). *See also* § 14(c)(1) of the Act.

"The extent to which the Board chooses to exercise its statutory jurisdiction is a matter of administrative policy within the Board's discretion ... it is not a question for the courts ... in the absence of extraordinary circumstances, such as unjust discrimination." *NLRB v. Carroll-Naslund Disposal, Inc.*, 359 F.2d 779, 780 (9th Cir. 1966).

At one time, the Board's policy was to decline jurisdiction over nonprofit charitable organizations unless such organizations had a massive impact on interstate commerce. However, once Congress had deleted the nonprofit hospital exemption from the Act, the Board re-evaluated its policy. In *Rhode Island Catholic Orphans Asylum a/k/a St. Aloysius Home*, 222 N.L.R.B. at 1345, the Board stated that

> there appears to be no present basis for giving special consideration to the charitable function or activities of institutions outside the health care field, when institutions within the coverage of the amendments may serve an equally charitable purpose, but are specifically made subject to the Board's jurisdiction.

Even so, Southeast and amicus contend that Congress did not intend for the Board to exercise jurisdiction over nonprofit organizations except in "extraordinary circumstances," and that *St. Aloysius Home* was erroneously decided.

The legislative history that amicus and Southeast rely on does not preclude the Board from asserting jurisdiction over Southeast. The most telling evidence of congressional intent was the statutory language exempting only nonprofit hospitals from the Board's jurisdiction. But Congress has chosen to delete this exemption from the Act. By so doing, "Congress appears to have agreed that non-profit institutions 'affect commerce' under modern economic conditions." *NLRB v. Yeshiva*

*University*, 444 U.S. 672, 681 n.11, 100 S.Ct. 856, 862 n.11, 63 L.Ed.2d 115 (1980). The House Report on the 1974 amendments noted that

> in recent years the Board began to assert jurisdiction over areas it had formerly left alone. Currently the only broad area of charitable, eleemosynary educational institutions wherein the Board does not now exercise jurisdiction concerns the non-profit hospitals explicitly excluded by Section (2)(2) of the Act.... The bill removes the existing Taft-Hartley exemption in Section (2)(2) of the Act. It restores to employees of non-profit hospitals the same rights and protections enjoyed by the employees of proprietary hospitals and most all other employees.

H.R.Rep. No. 93–1051, 93rd Cong.2d Sess. 4 (1974), *reported in Legislative History of the Coverage of Non-Profit Hospitals Under the National Labor Relations Act* (1974).

■ The only recent Supreme Court case which limits the Board's discretion in the use of its statutory jurisdiction is *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979). In *Catholic Bishop*, the Court held that it was necessary to find an affirmative expression of Congress' intent to extend the Board's jurisdiction to church-related schools, because of the delicacy of the first amendment issues involved in religious expression. Difficult first amendment issues are not involved in this case. Therefore, the Supreme Court's holding in *Catholic Bishop* does not preclude the Board from asserting jurisdiction over Southeast. The Court did not purport to limit the Board's longstanding policy of asserting jurisdiction over nonprofit organizations on a case-by-case basis. 440 U.S. at 504, 99 S.Ct. at 1320. Amicus, therefore, incorrectly concludes that *Catholic Bishop* stands for the proposition that only in special circumstances can the Board assert jurisdiction over nonprofit organizations. In light of the broad discretion given to the Board in the exercise of its jurisdiction, courts should intervene only where there is obvious unjust discrimination.

Such discrimination is not present in this case. The Board, then, did not abuse its discretion by exercising its statutory jurisdiction over Southeast.

## II. WAS SOUTHEAST DENIED DUE PROCESS IN THE ADMINISTRATIVE PROCEEDING?

■ Southeast claims that the Board relied on an allegedly coerced stipulation as the basis for its jurisdiction. Southeast did not raise this claim until the unfair labor practice proceeding in answer to the General Counsel's motion for summary judgment. At no time has Southeast denied the truth of the stipulated facts.

Under the Board's longstanding rule of practice, see 29 C.F.R. § 102.67(f), which the Courts have repeatedly endorsed, a party to an unfair labor practice proceeding may not raise an issue which was or could have been litigated in the prior representation proceeding, in the absence of newly discovered or previously unavailable evidence or special circumstances.

*Fall River Savings Bank v. NLRB*, 649 F.2d 50, 58–59 (1st Cir. 1981). *See also Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 162, 61 S.Ct. 908, 917, 85 L.Ed. 1251 (1941); *NLRB v. Pacific Int'l Rice Mills*, 594 F.2d 1323, 1327 (9th Cir. 1979), *cert. denied*, 444 U.S. 898, 100 S.Ct. 206, 62 L.Ed.2d 134 (1980); *NLRB v. Puritan Sportswear Corp.*, 385 F.2d 142, 143 (3d Cir. 1967). Southeast's "failure to exhaust administrative procedures ... precludes review of that issue in this court." *NLRB v. Thompson Transport Co.*, 406 F.2d 698, 701–02 (10th Cir. 1969). Moreover, the Supreme Court has stated in *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952), "courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."

The substance of Southeast's charge is frivolous. It is difficult to see how Southeast can seriously contend that by voluntarily submitting information which the General Counsel would have been entitled to subpoena under § 11 of the Act, they have somehow been coerced and denied due process. They have had their opportunity to litigate all relevant issues. Southeast, then, was not denied due process in the administrative proceeding.

The petition of the Board is GRANTED.