NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

WORLD EVANGELISM, INC.,
Respondent.

No. 80–7334.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 8, 1981.

Decided Sept. 21, 1981.

Rehearing and Rehearing En Banc
Denied Dec. 2, 1981.

John D. Burgoyne, Washington, D. C., argued, for petitioner; Elliott Moore, NLRB, Washington, D. C., on brief.

J. David Epstein, San Diego, Cal., for respondent.

Before SKOPIL and FARRIS, Circuit Judges, and CURTIS,* District Judge.

SKOPIL, Circuit Judge:

### FACTS

In October 1978 World Evangelism, Inc. ("WEI") acquired the El Cortez Center, a building complex occupying roughly one city block. The Center consisted of three motels, a swimming pool, a convention center, and a tower containing offices, hotel rooms, and restaurants. Prior to the acquisition, Handlery Hotels operated the Center, employing between five and nine engineers to operate its mechanical systems, including electrical, plumbing, heating and refrigeration, and the swimming pool. The engineers were represented by Operating Engineers Local 501 ("Local 501"), and covered by a contract in force from November 1, 1977 to November 1, 1980.

Shortly before the takeover WEI decided to retain the engineers. It did not state whether it would adopt Handlery's contract. It notified Local 501 that it would not be a "successor" owner. When the engineers heard this, they notified Local 501's Business Representative, Brown, that they would resign unless WEI adopted Handlery's contract. WEI requested them to wait until its Executive Vice President, David Cerullo, could meet with them.

Undisputed evidence showed that at the meeting Cerullo claimed that the telegram had been sent to Local 501 by mistake. He stated that Local 501 should draft a contract and return it to him. The engineers agreed to continue working. Further con-

---

* The Honorable Jesse W. Curtis, Senior United States District Judge for the Central District of California, sitting by designation.

tent of the discussion is disputed. The Administrative Law Judge ("ALJ") credited the testimony of the Union witnesses that Cerullo spoke in terms which would lead a reasonable person to conclude an agreement had been reached on the contract and only formal steps of drafting and signing remained.

Brown returned with a copy of the standard San Diego Hotel Industry form contract which Handlery had signed. He discussed the specimen contract with WEI General Manager Rose, whom Cerullo had designated as his representative. Rose expressed problems with the non-discrimination clause, claiming that WEI reserved the right to discriminate on the basis of religion. Brown stated that the Union had no such right but that satisfactory language could probably be arranged. Brown promised to furnish Rose a completed clean copy of the contract along with fringe benefit trust subscription forms.

During the next two months WEI did not sign the contract nor communicate with Local 501. Brown spoke with Rose about reports that WEI was paying the engineers less than the contract rate. He was assured that the matter would be "looked into."

In December 1978, WEI notified Local 501 that it had not adopted Handlery's contract and did not want to sign the contract. Brown had tendered. It still was concerned by the non-discrimination clause. WEI promised to interview the engineers regarding permanent jobs, suggesting for the first time that it considered them temporary employees.

WEI paid the engineers lower-than-contract wages. It also failed to contribute to the fringe benefit trusts referred to in the contract. WEI did not recognize nor bargain with Local 501 about these changes in the engineers' terms and conditions of employment.

## PROCEEDINGS BELOW

The National Labor Relations Board ("the Board"), affirming the ALJ, held that the National Labor Relations Act ("the Act"), 29 U.S.C. §§ 151 et seq., applied to WEI and that WEI violated sections 8(a)(5) and (1) of the Act, 29 U.S.C. §§ 158(a)(5), (1), by unilaterally changing terms and conditions of employment and by withdrawing recognition from and refusing to bargain with Local 501. 248 NLRB 909 (1980).

The Board ordered WEI to cease and desist, recognize Local 501, sign the pre-existing contract, and make whole employees for wages lost due to the refusal to implement that agreement.

## ISSUES

1. Did the Board properly assert jurisdiction over WEI?

2. Does substantial evidence support the Board's finding that WEI is a successor employer?

3. Does substantial evidence support the Board's finding that WEI adopted Handlery's collective bargaining agreement?

## DISCUSSION

I. Standard of Review.

We must enforce the Board's order if the Board correctly applied the law and if the Board's findings of fact are supported by substantial evidence in the record viewed as a whole, even if we might have reached a different conclusion based on the same evidence. *E. g., NLRB v. Nevis Industries, Inc.,* 647 F.2d 905, 908 (9th Cir. 1981); *Stephens Institute v. NLRB,* 620 F.2d 720, 726 (9th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980). We must consider both supporting evidence and contradictory evidence. *Nevis Industries, Inc., supra; Stephenson v. NLRB,* 614 F.2d 1210, 1214 (9th Cir. 1980). We will not overturn credibility determination unless shown to be incorrect by a clear preponderance of the evidence. *Nevis Industries, Inc., supra; NLRB v. Max Factor & Co.,* 640 F.2d 197, 204 (9th Cir. 1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 2314, 68

L.Ed.2d 840 (1981). The Board's interpretation of the Act is entitled to considerable deference, and must be upheld if reasonably defensible. *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979); *Nevis Industries, Inc., supra.*

## II. Jurisdiction.

■ The Board has power to prevent commission of unfair labor practices by "any persons . . . affecting commerce." 29 U.S.C. § 160(a). This gives the Board the broadest jurisdiction permitted under the Commerce Clause. *NLRB v. Reliance Fuel Oil Corp.*, 371 U.S. 224, 226, 83 S.Ct. 312, 313, 9 L.Ed.2d 279 (1963); *NLRB v. Children's Baptist Home*, 576 F.2d 256, 258 n.1 (9th Cir. 1978).

■ The Board asserts jurisdiction over non-profit religious organizations engaged in operations that are "in the generally accepted sense, commercial in nature," and if the time spent by the unit employees on commercial activities is more than *de minimis*. *First Church of Christ, Scientist*, 194 NLRB 1006, 1008 (1972). To focus its resources, the Board, in its discretion, has adopted jurisdiction guidelines expressed as a dollar amount of business volume. *Children's Baptist Home, supra.* The guideline for motels is $500,000 annual gross revenue. *NLRB v. Cofer*, 637 F.2d 1309, 1312 (9th Cir. 1981); *Floridian Hotel of Tampa, Inc.*, 124 NLRB 261, 264 (1959).

The Board found that WEI engaged in substantial commercial activities which were unrelated, except as a revenue source, to WEI's religious activities. WEI continued Handlery's contracts with two interstate airlines to provide hotel rooms on a priority basis for flight crews on layover. WEI continued to make motel rooms available to the transient public. The airline and transient lodgers are not screened for conformity to WEI's tenets, nor is their behavior at the hotel monitored. WEI leased out 25,000 square feet to 18 commercial tenants. While WEI's long-range plan is to use the Center exclusively for religious purposes, it conceded that that is not presently feasible.

The Board also found that a substantial portion of the engineers' time was spent on WEI's commercial activities. They worked throughout the complex on tasks required as much for the commercial activities as for the religious ones.

WEI's gross revenue is within the Board's jurisdictional guidelines. WEI stipulated that its motel receipts would exceed $500,000 annually.

There is substantial evidence supporting the Board's findings that the Center is, at present, a commercial operation, and that the engineers spent a substantial portion of their time on commercial activities.

A finding of Board jurisdiction in this case will not offend *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979). The narrow question addressed in that case was whether the Act gives the Board jurisdiction over teachers in church-operated schools. 440 U.S. at 507, 99 S.Ct. at 1322. In finding no jurisdiction, the Court relied in part on the fact that the Board had only recently reversed itself and asserted jurisdiction over private schools, after the most recent significant amendment of the Act. As a result, Congress had not passed upon the Board's action. *Id.* at 497-98, 505-06, 99 S.Ct. at 1317, 1321. The Court also noted that "the critical and unique role of the teacher in fulfilling the mission of a church-operated school" raised grave constitutional questions about the Board's assertion of jurisdiction. *Id.* at 501, 504, 99 S.Ct. at 1319, 1320. Consequently, the Court construed the Act not to grant jurisdiction over teachers in church-operated schools. *Id.* at 507, 99 S.Ct. at 1322.

In contrast to its practice with regard to private schools, the Board has long asserted jurisdiction over non-profit religious organizations engaged in commercial operations. *See Christian Board of Publications*, 13 NLRB 534, 547 (1939), *enf'd*, 113 F.2d 678 (8th Cir. 1940). In 1947 Congress rejected

proposed amendments to exempt all non-profit organizations from the Act. Congress appeared to ratify the Board's assertion of jurisdiction at least as to the commercial activities of non-profit organizations. H.R.Rep.No. 510, 80th Cong., 1st sess. 31–32 (1947), *reprinted in* I NLRB, Legislative History of the Labor Management Relations Act, 1947, at 535–36 (1948). *See NLRB v. Wentworth Institute,* 515 F.2d 550, 554–55 (1st Cir. 1975).

■ The First Amendment protects freedom to believe and freedom to act. The first is absolute. The second is "subject to regulation for the protection of society." *Cantwell v. Connecticut,* 310 U.S. 296, 303–04, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). *See also McDaniel v. Paty,* 435 U.S. 618, 626–27, 98 S.Ct. 1322, 1327–28, 55 L.Ed.2d 593 (1978). Regulation of the freedom to act must not unduly infringe the protected freedom. *Cantwell v. Connecticut, supra* 310 U.S. at 304, 60 S.Ct. at 903; *McDaniel v. Paty, supra* 435 U.S. at 628, 98 S.Ct. at 1328.

■ The minimal infringement of WEI's freedom of operation is clearly outweighed here by the Act's role of promoting labor peace. Requiring WEI to recognize a union would not contravene its religious tenets. Nor would WEI's religious tenets compel it to commit an unfair labor practice. There has been no showing that recognizing a union would significantly impede WEI's ability to propagate its beliefs. *See St. Elizabeth Community Hospital v. NLRB,* 626 F.2d 123, 128–29 (9th Cir. 1980) (Sneed, J. dissenting). *See also Yott v. North American Rockwell Corp.,* 501 F.2d 398, 403 (9th Cir. 1974) (clause requiring union membership of Seventh Day Adventist not unconstitutional); *Cap Santa Vue, Inc. v. NLRB,* 424 F.2d 883, 891 (D.C. Cir. 1970) (applying Act to employer with religious objections to collective bargaining not unconstitutional). *But cf. Catholic Bishop of Chicago v. NLRB,* 559 F.2d 1112, 1123–25 (7th Cir. 1977), *aff'd on other grounds,* 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979) (unconstitutional to apply Act where unionization would inhibit a religious group's ability to propagate its beliefs).

The Board properly assumed jurisdiction over WEI. WEI's operations were commercial, and its unit employees spent a substantial portion of time engaged in commercial activities. The limited exception to jurisdiction carved out in *NLRB v. Catholic Bishop of Chicago, supra,* 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533, is not applicable to this case.

### III. WEI as a Successor Employer.

■ A new owner of a business must recognize and bargain with a representative of employees covered by a collective bargaining agreement if found to be a "successor employer." *NLRB v. Burns International Security Services, Inc.,* 406 U.S. 272, 281, 92 S.Ct. 1571, 1579, 32 L.Ed.2d 61 (1972); *Kallmann v. NLRB,* 640 F.2d 1094, 1100 (9th Cir. 1981). A successor employer is one who conducts essentially the same business as the former employer, and a majority of whose work force are former employees, *or would have been former employees absent an unlawful refusal to hire. Kallmann, supra.* A successor employer commits an unfair labor practice by refusing to bargain with the previously recognized union unless it can show either that the union in fact no longer represents a majority of the members of the bargaining unit, or that there are circumstances affording a reasonable basis for good-faith doubt about the majority. *NLRB v. Edjo, Inc.,* 631 F.2d 604, 607 (9th Cir. 1980). There is substantial evidence in the record supporting the Board's finding that WEI is Handlery's successor. It retained all of the bargaining unit employees. It continued to operate the Center's hotel facilities and its commercial leasing operations. The unit employees continued to work at the same location performing the same tasks.

■ A successor employer is ordinarily free to set initial terms and conditions of

employment without first bargaining with the incumbent union. Where, however, it is perfectly clear that the successor plans to retain substantially all the employees, the successor must consult with the union before altering terms and conditions. *Burns International Security Services, Inc. v. N. L. R. B.*, 406 U.S. at 294–95, 92 S.Ct. at 1585–86, 32 L.Ed.2d 61; *Kallmann*, 640 F.2d at 1102. When the successor does not evince an intention to modify the pre-existing terms before expressing willingness to re-hire incumbents, the employer must consult with the union before altering employment terms. *Bellingham Frozen Foods, Inc. v. NLRB*, 626 F.2d 674, 678–79 (9th Cir. 1980), *cert. denied*, 449 U.S. 1125, 101 S.Ct. 941, 67 L.Ed.2d 110, 111 (1981).

■ Here it was perfectly clear that WEI intended to retain all of Handlery's engineers at their previous jobs. WEI was required to consult with the employees' bargaining representative before altering the terms of the pre-existing contract. WEI admittedly paid wages to the engineers which were lower than those prescribed by Handlery's contract. It also admittedly discontinued contributing to the employees' fringe benefit trusts. It took these steps without prior notice or bargaining with the Union. WEI violated sections 8(a)(5) and (1) of the Act by unilaterally altering terms and conditions of employment.

### IV. Adoption of the Handlery Contract.

■ A successor employer is not required to observe the terms of its predecessor's contract. A successor may choose to accept its predecessor's agreement. *Burns International Security Services, Inc.*, 406 U.S. at 291, 92 S.Ct. at 1584; *Kallmann*, 640 F.2d at 1103. *See also Audit Services, Inc. v. Rolfson*, 641 F.2d 757, 763 (9th Cir. 1981).

■ In determining whether parties agreed to a contract, the Board is not bound by technical questions of traditional contract interpretation. The Board is free to use general contract principles adapted to the collective bargaining context to determine whether the two sides have reached an agreement. *NLRB v. Electra-Food Machinery, Inc.*, 621 F.2d 956, 958 (9th Cir. 1980); *NLRB v. Donkin's Inn, Inc.*, 532 F.2d 138, 141–42 (9th Cir.), *cert. denied*, 429 U.S. 895, 97 S.Ct. 257, 50 L.Ed.2d 179 (1976). We review the Board's finding as to the existence of an agreement as a question of fact, governed by the substantial evidence standard of review.

■ In this case, the ALJ credited the testimony of the Union witnesses that Cerullo spoke in terms which would lead a reasonable person to conclude that agreement had been reached. The ALJ also relied upon WEI's subsequent actions. It apparently acquiesced in Brown's statement that he and Rose had reached agreement on contract terms. WEI brushed aside Brown's questions about the wages the engineers were receiving. It failed to indicate an inability to reach an agreement for over two months. The ALJ found this inconsistent with the belief that only negotiations were underway. The ALJ interpreted the discussions regarding the non-discrimination clause as a gratuitous, post-agreement concession by Brown to Rose, rather than an indication that WEI had not bound itself to the Handlery contract.

WEI does not contend that a clear preponderance of the evidence requires reversal of the ALJ's credibility determinations. Those determinations, along with WEI's post-agreement conduct, constitute substantial evidence supporting the finding that WEI adopted Handlery's contract. By failing to implement the terms of that contract, WEI violated sections 8(a)(5) and (1) of the Act.

### CONCLUSION

The Board properly asserted jurisdiction over WEI. Substantial evidence supports the Board's finding that WEI is a successor employer. Because it was perfectly clear that WEI intended to retain the engineers,

WEI violated sections 8(a)(5) and (1) by altering terms and conditions of employment without consulting with their representative. Substantial evidence supports the Board's finding that WEI adopted Handlery's contract. Its failure to abide by the contract's terms violated sections 8(a)(5) and (1).

The Board's order is ENFORCED.