**VOLUNTEERS OF AMERICA–MINNESOTA–BAR NONE BOYS RANCH, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 84–1536.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1984.

Decided Jan. 15, 1985.

---

William Wachter, Edward S. Dorsey, Attys., N.L.R.B., Daniel Pollitt (argued), Washington, D.C., for respondent.

Holland & Hart, John M. Husband, Denver, Colo., for petitioner.

Before BRIGHT, McMILLIAN and BOWMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

The Volunteers of America-Minnesota (VOA-Minnesota) seeks review of an order of the National Labor Relations Board (NLRB) requiring the VOA-Minnesota Bar None Boys Ranch (the Ranch) to bargain with the union representing the employees of the Ranch. The NLRB has cross-applied for enforcement of its order. For denial of enforcement, the VOA-Minnesota argues that (1) the NLRB improperly exercised jurisdiction over the Ranch and (2) the exercise of jurisdiction infringed the "free exercise" and "establishment" clauses of the first amendment. For the reasons discussed below, we affirm the decision of the NLRB and grant enforcement of the NLRB's order.

The Ranch is a religiously-affiliated residential treatment center for children that is operated by the VOA-Minnesota, an unincorporated association that operates under the direction of the National Society of the VOA. The VOA is a religious movement that started in New York City in 1896. The VOA-Minnesota Post was also established in 1896. The VOA-Minnesota Post and the National Society are recognized as religious orders. The VOA is recognized as a church by the Internal Revenue Service and by the Commerce Department. The state of Minnesota has also granted the VOA an exemption as a non-profit organization and has recognized the VOA as a church. The VOA does not pay federal income tax, federal F.I.C.A. tax, state tax, sales tax, or property tax. All of the offi-

cers of the National Society of VOA are either ordained or licensed ministers.

The VOA is divided into four regions nationally and the regions are divided into state organizations called posts. The posts, directed by ordained ministers, in turn are responsible for the VOA programs operated in the post. The Ranch is in the Minnesota Post, which is directed by Reverend James Hogie.

The VOA's basic religious philosophy is set out in ten "cardinal doctrines" in Article XI of the VOA's constitution. The VOA does not solicit new members to the VOA. Rather, the VOA is committed to assisting persons to return to and to actively practice the faith of their choice. The VOA is offered as a church only to those who have not already chosen a religious faith. Although the VOA does not attempt to proselytize new members, it does seek to bring people to a knowledge of God by providing humanitarian services to those in need. One such program for doing this is the Ranch.

The Ranch is a coeducational residential treatment facility in Anoka, Minnesota, for children with emotional, neurological and developmental problems. The director of the Ranch, Verlyn Wenndt, has responsibility for all services provided by the Ranch and reports to Reverend James Hogie. The Ranch's program director, Larry Weight, has responsibility for the Ranch's internal operations. Neither is an ordained minister nor does the record indicate that any VOA ministers work at the Ranch. The director of religious education is responsible for coordinating the religious and spiritual activities of the children. A chapel committee, made up of the director of religious education, the child care staff and social workers, also takes part in planning the spiritual and religious aspects of the program at the Ranch.

On July 28, 1983, Teamsters Local No. 683 filed with the NLRB's regional office in Minneapolis, Minnesota, a petition for a representation election among the Ranch's maintenance, laundry, housekeeping and child care workers. A hearing officer from the NLRB regional office conducted a non-adversary hearing on issues raised by the petition. The Ranch contended at the hearing that the Ranch operates as a part of the VOA and that the NLRB's assertion of jurisdiction is impermissible under the National Labor Relations Act (the Act), as amended, 29 U.S.C. § 151 *et seq.* (1982), and the religion clauses of the first amendment because of the risk of excessive governmental entanglement with religion.

On September 1, 1983, the acting regional director of the NLRB directed that an election be held and found that the Ranch's facility

> provides an essentially secular charitable service in a sectarian manner; that eligibility to participate as a resident of [the facility] is determined without regard to religious affiliation; that the employees ... are hired without regard to religious affiliation; that the employees ... are not required to join the national [religious] organization; [and] that the duties of these employees do not include the propagation of the national organization's substantive religious convictions.

On September 28, 1983, the NLRB denied the Ranch's request for review. On September 29, 1983, a representation election was held and the union won by a vote of 33 to 6. Subsequently, the NLRB's acting regional director certified the union as the collective bargaining representative of the Ranch's maintenance, laundry, housekeeping, and child care workers.

After the Ranch refused the union's oral request to begin collective bargaining, the union filed an unfair labor practice charge alleging that the Ranch's refusal to bargain was unlawful. A complaint was issued on the charge alleging that the Ranch's refusal to bargain with the union violated § 158(a)(5) of the Act. The Ranch admitted its refusal to bargain but asserted that the refusal was not unlawful because the NLRB's exercise of jurisdiction over it was improper. On April 17, 1984, the NLRB granted the union's motion for summary judgment, found the Ranch's refusal

to bargain unlawful and issued a bargaining order.

On appeal VOA-Minnesota argues that the exercise of jurisdiction by the Board poses a significant risk of entanglement with the VOA's religious tenets and, therefore, jurisdiction may not be exercised because there has been no affirmative expression by Congress that the NLRB should exercise jurisdiction over religious institutions such as the Ranch. Further, the VOA argues that the exercise of jurisdiction, even if properly asserted by the NLRB, violates the "establishment" and "free exercise" clauses of the first amendment.

■■■ Congress intended to grant the NLRB the broadest possible jurisdiction permitted by the Constitution. *NLRB v. St. Louis Christian Home*, 663 F.2d 60, 62 (8th Cir.1981) (*Christian Home*). The Board may exercise jurisdiction over all employers except those expressly excluded by the Act, *e.g.*, the United States, states or political subdivisions, 29 U.S.C. § 152(2), or those excluded under the Board's discretionary jurisdictional standards expressed as a minimum level of gross annual revenues. *Id.* § 164(c)(1). The Ranch admits that it comes within the statutory definition of "employer" and is engaged in interstate commerce.

The VOA-Minnesota bases its claim for exclusion on *NLRB v. Catholic Bishop*, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979) (*Catholic Bishop*), wherein the Supreme Court held that the NLRB had improperly exercised jurisdiction over Catholic parochial schools operated by the Catholic Bishop of Chicago. The VOA emphasizes the similarity between the Chicago parochial schools and the Ranch: (1) both are operated by recognized churches, (2) both are means by which the religion of the church is made known to others, and (3) the employees of the Ranch and the Chicago parochial schools are involved in the religious instruction of children.

These arguments are without merit. Similar arguments were rejected in *Christian Home*, 663 F.2d 60, and *Denver Post v. NLRB*, 732 F.2d 769 (10th Cir.1984) (NLRB properly exercised jurisdiction over VOA residential and out-patient social services programs). This court held in *Christian Home* that "church operation, although important, constituted but one of many features which considered together" would indicate potential first amendment problems. 663 F.2d at 63. We held that the Christian Home, a child care facility operated by the Christian Church, was essentially secular in operation and differed significantly from parochial schools. Notably, the Christian Home received funds primarily from government sources, admitted children and hired staff without regard to religion, and only provided Christian Church services with the consent of the parents. *Id.* at 64.

The evidence demonstrates that the Ranch, like the Christian Home, differs from a parochial school. Although the VOA may view the Ranch as a vehicle for its religious missionary activities, the Ranch resembles a secular institution in critical aspects. The Ranch has as its primary purpose the care of children, not the propagation of faith. The Ranch is operated by the VOA-Minnesota, a church, but there are no ministers on staff at the Ranch. The lay staff is chosen without regard to religious beliefs or affiliations and does not propagate the tenets of the VOA. The staff does not conduct religious classes or services and does not attempt to persuade children to accept VOA sectarian doctrines. Religious services are conducted at the Ranch by ministers of various denominations from the community.

■■ The Ranch and its employees perform essentially secular functions. This is in contrast to the parochial schools in *Catholic Bishop* where the religious character of the schools existed at all three levels: the church had a religious purpose in establishing the schools, the schools had a religious purpose, and the teachers were mandated to propagate sectarian doctrines. As we said in *Christian Home*, "[i]t is the commitment of the faculty to religious values ... and the obligation to propagate

those values which provide the risk of entanglement." This purpose and function is absent in the Ranch. 663 F.2d at 64 n. 5, citing *NLRB v. Bishop Ford Central Catholic High School*, 623 F.2d 818, 822 (2d Cir.1980), *cert. denied*, 450 U.S. 996, 101 S.Ct. 1698, 68 L.Ed.2d 196 (1981).

■ The VOA-Minnesota argues that its religious commitment to serve as many children as possible will bring it into conflict with the union, which wants to enhance the economic well-being of its members.[1] Further, the VOA envisions the NLRB intervening where a staff person has been disciplined for not carrying out a duty related to the VOA religious tenets. We do not believe that the VOA-Minnesota has demonstrated that such is likely to occur or that their sectarian objectives for the Ranch will be impaired. Inquiry by the NLRB need not intrude on any activity substantially religious in character. The VOA-Minnesota's speculation that sectarian objectives will be impaired is insufficient to deprive the NLRB of jurisdiction. *St. Elizabeth Community Hospital v. NLRB*, 626 F.2d 123, 129 (9th Cir.1980).

■ The NLRB's assertion of jurisdiction over the Ranch does not pose a significant risk of entanglement and does not violate the free exercise clause or the establishment clause of the first amendment. We therefore need not decide whether Congress expressed an "affirmative intention" to confer jurisdiction. Accordingly, we enforce the NLRB's order requiring the Ranch to bargain collectively with the union.

---

1. The VOA-Minnesota in oral argument cited as supportive of its position this court's characterization of the collective bargaining process as "confrontational and adversarial." *Donovan v. Tony & Susan Alamo Foundation*, 722 F.2d 397, 403 (8th Cir.1983) (*Alamo*), *cert. granted,* — U.S. —, 105 S.Ct. 290, 83 L.Ed.2d 226 (U.S. 1984). The VOA argues that confrontation between VOA and the union and the subsequent intervention by the Board will inevitably result in the Board becoming excessively entangled with VOA religious tenets.

*Alamo* involved the applicability of the Fair Labor Standards Act (FLSA) to persons who received lodging, food, transportation, and

medical care in exchange for working in thirty commercial businesses operated by a religious foundation engaged in evangelism. Collective bargaining was described in *Alamo* as confrontational and adversarial only to demonstrate that the application of the FLSA to a religious organization did not present the same risk of entanglement as was present in the collective bargaining in *NLRB v. Catholic Bishop*, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979). We did not hold that the confrontational quality of collective bargaining deprives the NLRB of jurisdiction over religiously-affiliated organizations. Each case must be examined to determine if there is excessive entanglement.