**VOLUNTEERS OF AMERICA, LOS ANGELES, Petitioner/Cross/Respondent,**

v.

**NATIONAL LABOR RELATIONS · BOARD, Respondent/Cross/Petitioner.**

**Nos. 84–7679, 84–7826.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 7, 1985.

Decided Dec. 6, 1985.

John Husband, Holland & Hart, Denver, Colo., for petitioner/cross/respondent.

Elliott Moore, N.L.R.B., Washington, D.C., for respondent/cross/petitioner.

Before CHAMBERS, SKOPIL, and CANBY, Circuit Judges.

SKOPIL, Circuit Judge:

The Volunteers of America of Los Angeles ("VOA") is charged by the National Labor Relations Board ("Board") with violating sections 8(a)(1) and (5), 29 U.S.C. §§ 158(a)(1) and (5) (1982), of the National Labor Relations Act ("Act"). VOA contends that the Board erred in asserting jurisdiction over the VOA. The Board rejected the jurisdictional challenge and ordered VOA to bargain with the union. *Volunteers of America*, 272 NLRB No. 38 (1984). We conclude that the Board's exercise of jurisdiction was proper.

## FACTS AND PROCEEDINGS BELOW

The VOA is a non-profit, religious and charitable organization. The church has ordained ministers, conducts religious services, practices traditional Christian cardinal doctrines, sacraments and prayers, and operates missions and service programs for the needy. The VOA has been held to be a bona fide church by all applicable federal and state agencies. The church's purpose is "to reach and up-lift the most needy members of society and to bring them to the immediate knowledge and active service of God."

At issue in this case is VOA's Alcoholism Services Division which operates a detoxification unit in downtown Los Angeles and a resident recovery unit in Hollywood. Both programs are operated under contracts with Los Angeles County and are funded almost entirely with federal block grants. The contracts with the county prohibit employment discrimination in regard to, *inter alia*, religion. VOA's employment application contains no questions on religious affiliation. The issue is not raised during employment interviews. Employee orientation materials are all secular; employees receive no training or indoctrination in VOA's religious beliefs. Employees do not solicit support for the church from clients or conduct traditional missionary work.

On December 8, 1983 the AFSCME Social Service Union, Local 1108, AFL–CIO ("union") filed a petition with the Board seeking certification as the exclusive bargaining representative for certain VOA Alcoholism Service Division employees. The Board conducted hearings on a jurisdiction-

al challenge by VOA and on the appropriateness of the designated unit. On January 20, 1984 the Regional Director rejected VOA's jurisdictional challenge. An election was conducted among eligible employees. The union prevailed and was certified by the Board as the exclusive collective bargaining agent.

VOA refused to provide information to the union or bargain with union representatives, and consequently was charged with unfair labor practices. In defense, VOA again raised a jurisdictional challenge. The Board determined that VOA was precluded from relitigating the jurisdictional issue and ordered VOA to bargain with the union.

VOA seeks review of the Board's order. The Board cross-applies for enforcement. The only issue presented to us on appeal is whether the Board acted beyond its jurisdictional authorization. *See St. Elizabeth Community Hospital v. NLRB*, 626 F.2d 123, 125 (9th Cir.1980) (jurisdictional challenge is properly before court if employer raised constitutional issue anytime before enforcement proceeding).

## DISCUSSION

**A. Standard of Review.**

The Board's interpretation of the Act is entitled to considerable deference and must be upheld if reasonably defensible. *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979). "Whether the issue involves a jurisdictional determination or a substantive application, the experienced judgment of the Board is entitled to great weight...." *Marriott Corp. v. NLRB*, 491 F.2d 367, 370 (9th Cir.), *cert. denied*, 419 U.S. 881, 95 S.Ct. 146, 42 L.Ed.2d 121 (1974).

**B. Merits.**

The Board is empowered to prevent the commission of unfair labor practices by "any persons ... affecting commerce." 29 U.S.C. § 160(a) (1982). This statute is intended to give the Board the broadest jurisdiction possible under the commerce clause.

*NLRB v. World Evangelism, Inc.*, 656 F.2d 1349, 1353 (9th Cir.1981) (*citing NLRB v. Reliance Fuel Oil Corp.*, 371 U.S. 224, 226, 83 S.Ct. 312, 313, 9 L.Ed.2d 279 (1963)). Since the Act does not specifically exempt nonprofit charitable organizations, the Board has held, with our approval, that it has jurisdiction over such employers when they affect commerce. *See NLRB v. Southwest Ass'n for Retarded Citizens, Inc.*, 666 F.2d 428, 430 (9th Cir.1982).

■ VOA contends that the Supreme Court's decision in *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979), precludes the Board's exercise of jurisdiction over the Alcoholism Treatment Division. Under the analysis set forth in *Catholic Bishop*, the standard to be applied is whether the exercise of the Board's jurisdiction over church-operated institutions presents a significant risk that the first amendment will be infringed. *Id.* at 502, 99 S.Ct. at 1319. *See also Estate of Thornton v. Caldor, Inc.*, —— U.S. ——, 105 S.Ct. 2914, 2917, 86 L.Ed.2d 557 (1985) (to be consistent with the first amendment a statute must have a secular purpose, not foster excessive entanglement of government with religion, and its primary effect must not advance or inhibit religion); *St. Elizabeth Community Hospital v. NLRB*, 708 F.2d 1436, 1440–43 (9th Cir.1983) (further dividing analyses between establish-ment clause and free exercise clause).

In *Catholic Bishop* the Court held that the Board did not have jurisdiction over lay teachers at Catholic schools. The Court found "no clear expression of an affirmative intention of Congress" that the Board exercise jurisdiction over teachers in church-operated schools. *Catholic Bishop*, 440 U.S. at 504, 99 S.Ct. at 1320. Although the Court recognized the possibility of an impermissible risk of excessive governmental entanglement in church affairs, it avoided this constitutional issue and instead rested its decision on statutory grounds. *Id.* at 507, 99 S.Ct. at 1322.

■ We conclude that *Catholic Bishop* does not mandate a conclusion here that the Board exceeded its jurisdictional authority. Instead, we are persuaded by the decisions of various circuit courts which have uniformly upheld the Board's assertion of jurisdiction over church operated, non-school institutions. *E.g., NLRB v. Salvation Army of Massachusetts Dorchester Day Care Center*, 763 F.2d 1, 6 (1st Cir. 1985) (day care center); *VOA-Minnesota-Bar None Boys Ranch v. NLRB*, 752 F.2d 345, 349 (8th Cir.) (treatment center for children), *cert. denied*, —— U.S. ——, 105 S.Ct. 3502, 87 L.Ed.2d 633 (1985); *Denver Post of the National Society of the Volunteers of America v. NLRB*, 732 F.2d 769, 773 (10th Cir.1984) (temporary shelters for women and children); *St. Elizabeth Hospital v. NLRB*, 715 F.2d 1193, 1196 (7th Cir.1983) (hospital); *Tressler Lutheran Home For Children v. NLRB*, 677 F.2d 302, 307 (3d Cir.1982) (nursing home); *World Evangelism*, 656 F.2d at 1354 (commercial hotel complex); *see also Tony and Susan Alamo Foundation v. Secretary of Labor*, —— U.S. ——, 105 S.Ct. 1953, 1963–64, 85 L.Ed.2d 278 (1985) (Fair Labor Standards Act applies to church's secular activities).

Nonetheless, the VOA argues that since its primary church activity is the operation of social programs, the Board's assertion of jurisdiction is unconstitutional. VOA contends that its social and welfare activities are an "intregal, inseparable function of its avowed principle of serving God by serving humanity, and of serving God and humanity by deed and example." Service to humanity is the "absolute central motivating force for the VOA and its very reason for existence." Consequently, VOA argues that its activities, although appearing secular, are actually the church's primary goal and commitment. For that reason, the VOA believes that the Board's assertion of jurisdiction over those programs violates the first amendment.

VOA's arguments have been expressly rejected by two circuit courts. In *VOA-Minnesota*, 752 F.2d at 349, the Eighth Circuit concluded that the VOA's coeducational, residential treatment facility for children was subject to the Board's jurisdiction. The court reasoned that the facility, unlike the parochial school in *Catholic Bishop*, resembles a secular institution in all critical aspects. *Id.* at 348. Its primary purpose is the care of children and not the propagation of faith; lay employees are chosen without regard to religious beliefs or affiliations and they do not conduct religious classes or services or solicit members. *Id.* Although VOA's religious commitment is to serve as many children as possible, the court concluded that Board intervention in labor relations will not substantially impair that commitment. *Id.* at 349.

Similarly, in *Denver Post*, 732 F.2d at 771–73, the Tenth Circuit examined VOA's claim that the Board could not lawfully exercise jurisdiction over VOA facilities that provide temporary shelter, care, and counseling for women and children. The court concluded that unlike the schools in *Catholic Bishop*, there was "no comparable infusion of religion into the VOA social programs." *Id.* at 772. The court acknowledged that VOA's primary purpose is to perform religious missionary activities and that its purpose is achieved through these social programs. *Id.* Nevertheless, an examination of the programs showed that they are not pervasively religious in character, despite their religious objectives. *Id.* at 773. The programs function in "essentially secular fashion." *Id.*

Additionally, in *Salvation Army*, 763 F.2d at 4–7, the First Circuit examined the Board's jurisdiction over a day care facility operated by the Salvation Army. The court found an operation whose primary business is the provision of day care to children that is indistinguishable from secular day care centers. *Id.* at 6. "The risk of serious constitutional questions being raised in these circumstances is simply too insignificant and speculative to be comparable to the risks present in *Catholic Bishop* ...." *Id.*

We are not persuaded to depart from *VOA-Minnesota, Denver Post,* and *Salvation Army.* Like the children's treatment center in *VOA-Minnesota,* the shelters in *Denver Post,* and the day care facility in *Salvation Army,* the alcohol treatment centers in this case are essentially secular. Regardless of how the VOA views its religious mission, that view is not imposed upon the employees. *See Denver Post,* 732 F.2d at 772. Primarily because of funding conditions, the VOA staff cannot propagate their employer's religious doctrine, an important distinction from the parochial schoolteachers in *Catholic Bishop.* As the Tenth Circuit reasoned in *Denver Post,* the constitutional problems identified in *Catholic Bishop,* "stemmed not from the church's religious philosophy itself, but from the infusion of that philosophy into the school's functions and the critical role it performed." *Id.* The VOA's social programs are expressive of a religious philosophy but are carried out in a secular fashion. That distinction has led courts to hold that the Board's assertion of jurisdiction over VOA's programs (and other similar church's programs) does not pose a significant risk of entanglement with religion and does not violate the free exercise clause or the establishment clause of the first amendment. *Salvation Army,* 763 F.2d at 6–7; *VOA-Minnesota,* 752 F.2d at 349; *Denver Post,* 732 F.2d at 773; *St. Elizabeth,* 708 F.2d at 1441–43. We conclude that the Board properly asserted jurisdiction over the activities at issue here.

ENFORCED.