**FEDERATION OF AGENTS AND INTERNATIONAL REPRESENTATIVES, an unincorporated association, Plaintiff–Appellee,**

**v.**

**UNITED FOODS AND COMMERCIAL WORKERS UNION, LOCAL 101, an unincorporated association, Defendant–Appellant.**

**Nos. 99–16414, 99–16806.**
**D.C. No. CV–99–00524–MHP.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 12, 2001.

Decided April 23, 2001.

Before B. FLETCHER, FERNANDEZ, and PAEZ, Circuit Judges.

MEMORANDUM [1]

The underlying dispute involves an employer, United Foods Local 101 ("Local 101"), and a union, Federation of Agents ("FAIR"). FAIR represents employees of Local 101. After Local 101 terminated eight employees, allegedly in violation of the collective bargaining agreement ("CBA"), FAIR, representing these eight terminated employees, sought arbitration of their grievances pursuant to the CBA. After Local 101 resisted arbitration, FAIR brought suit in district court seeking compelled arbitration and attorneys' fees. This appeal is from the district court's final order compelling arbitration and awarding fees to FAIR. We affirm.

JURISDICTION

The district court had jurisdiction over this action by a union to compel arbitration pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The district court's order compelling arbitration was a final order, which gives us jurisdiction pursuant to 28 U.S.C. § 1291. *United Bhd. of Carpenters and Joiners of Am., Local No. 1780 v. Desert Palace, Inc.,* 94 F.3d 1308, 1309 (9th Cir.1996). We also have jurisdiction, pursuant to § 1291, over an appeal of the district court's award of attorneys' fees.

BACKGROUND

In June 1998, Local 101 held an election for executive positions. The election resulted in the unseating of Local 101's president, Ron Hall, and his slate of candidates for executive office. Dan Earls became the new president of Local 101. In October of 1998, shortly after taking office as the president of Local 101, Earls terminated eight Local 101 employees, all of whom

1. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Cir. R. 36-3.

had been supporters of Hall. According to the employees, their termination was in violation of the "change of administration" clause of the CBA.

The eight employees, through their collective bargaining unit FAIR, attempted to initiate the grievance and arbitration procedure set forth in the CBA negotiated by Local 101 and FAIR and allegedly in existence at that time. Under the CBA, the grievance and arbitration procedure is the "sole and exclusive method for resolving grievances." Nevertheless, Local 101 initially delayed arbitration and then categorically refused to arbitrate; arguing that there was no valid CBA in effect.

FAIR filed a complaint and motion to compel arbitration in district court. Finding that a valid CBA with an arbitration provision existed between the parties, the district court granted FAIR's motion to compel arbitration. The district court also found that Local 101 unreasonably and in bad faith attempted to avoid arbitration and awarded FAIR attorneys' fees. Local 101 appeals the district court's order. With respect to the district court's order compelling arbitration, because the relevant question for our review is whether, as a matter of law, a contract existed between the parties, we review de novo. *See Warehousemen's Union Local No. 206 v. Continental Can Co.,* 821 F.2d 1348, 1350 (9th Cir.1987). We review the district court's award of attorneys' fees for an abuse of discretion. *Fischer v. SJB–P.D., Inc.,* 214 F.3d 1115, 1118 (9th Cir.2000).

## DISCUSSION

### I. Compelled Arbitration

Typically, when a court decides whether to compel arbitration of a labor dispute, it considers two issues: (1) whether there was an agreement to arbitrate; and (2) whether the dispute is "arbitrable" pursuant to that agreement. *AT & T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 648–49, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Local 101 conceded the latter issue to the district court by agreeing that the termination of agents is covered by the broad arbitration provision contained in all versions of the CBA negotiated between the parties. Thus, the sole issue we must decide in determining whether the district court erred in compelling arbitration is the former, namely: Was there a valid collective bargaining agreement, which included a mandatory arbitration provision, in existence between the parties at the time FAIR sought to arbitrate the grievances in October of 1998?

Local 101 concedes that a March 1998 memo carried over for a four-year period ending on April 1, 2000 that included the mandatory arbitration provision. Representatives of both parties signed this memo; Local 101's executive board approved it; and FAIR's membership ratified it. Contract formation is beyond question. *See Warehousemen's,* 821 F.2d at 1350 (in determining the validity of a collective bargaining agreement, the court employs "'general contract principles adapted to the collective bargaining context to determine whether the two sides have reached an agreement.'" (quoting *NLRB v. World Evangelism, Inc.,* 656 F.2d 1349, 1355 (9th Cir.1981))).

In light of the above, it is difficult to see how a validly formed CBA, which on its face would require arbitration with respect to grievances made in October of 1998, could be called into question by Local 101. The argument Local 101 attempts to make is that although Local 101 originally thought that the March 1998 memo created a valid agreement on the date of its signing and ratification by the two parties, by the time FAIR sought arbitration

of the grievances in October 1998, Local 101 no longer believed it was valid. To explain its change of position, Local 101 claims that because FAIR proffered and relied upon a different document than the March 1998 memo, it demonstrated that the parties did not have a meeting of the minds in March 1998. This argument is without merit.

At the time of the signing and ratifying of the March 1998 memo, the parties intended the collective bargaining agreement (and its arbitration provision) to continue until 2002. The parties' intent and their objective manifestation of that intent at the time of the agreement controls the validity of that agreement. *Local Freight Drivers, Local No. 208 v. Braswell Motor Freight Lines, Inc.*, 422 F.2d 109, 113 (9th Cir.1970) ("[E]vidence relevant on the question of arbitrability includes evidence of the parties' intent as expressed during collective bargaining."). If Local 101 wants to argue that subsequent events or agreements had the effect of terminating or repudiating the March 1998 agreement, Local 101 could (as it did) make that argument in front of the arbitrator. *See Camping Constr. Co. v. Dist. Council of Iron Workers,* 915 F.2d 1333, 1340 (9th Cir.1990) ("[O]nce it is found that a contract did exist at some time, the questions of whether that contract has expired, or has been terminated or repudiated, may well present arbitrable issues [if the arbitration provision is broad]."). However, "[t]he fact that differences subsequently arise between the parties as to the construction of the contract ... is not of itself sufficient to affect the validity of the original contract or to show that the minds of the parties did not meet with respect thereto." *Warehousemen's,* 821 F.2d at 1350–51 (citation and internal quotation marks omitted). Whatever differences in content that exist between the ratified March 1998 memo agreement and the unratified September 1998 memo, which purports to memorialize the integrated terms of the previous agreements, does not somehow retroactively demonstrate that the parties never reached a meeting of the minds as to the March 1998 memo agreement.

We, therefore, affirm the district court's order compelling arbitration pursuant to a valid CBA in existence between the parties.

II. Attorneys' Fees

A district court may award attorneys' fees if it finds that the losing party acted in bad faith, vexatiously or for oppressive reasons. *Int'l Union of Petroleum Workers v. W. Industr. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir.1983). Because of federal policy favoring arbitration, we have applied a less demanding—"without justification"—standard in cases involving refusals to arbitrate. *United Food & Commercial Workers Union v. Alpha Beta Co.,* 736 F.2d 1371, 1382–83 (9th Cir.1984).

With respect to attorneys' fees, Local 101 emphasizes that FAIR proffered a September 1998 memo (and not the March 1998 memo agreement) as the controlling agreement upon which arbitration should proceed. It then argues that even if there is a valid CBA in existence as a result of the March 1998 memo agreement, the differences between the September 1998 document and the March 1998 memo are significant enough for Local 101 to have resisted arbitration in good faith.

In exercising its discretion in awarding attorneys' fees, the district court noted several factors that led the court to believe that Local 101 had acted in bad faith. The factors found and relied upon by the district court included evidence of delay tac-

tics and inconsistent positions taken by Local 101 in this and other proceedings.

There is ample evidence in the record to support the findings of the district court. The district court did not abuse its discretion in finding that Local 101 resisted arbitration "without justification" and in bad faith.

We, therefore, also affirm the award of attorneys' fees against Local 101.

CONCLUSION

For the reasons stated above, we AFFIRM the district court's order compelling arbitration and awarding attorneys' fees to FAIR.

AFFIRMED